**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
|   FUNNEL SCIENCE INTERNET | § | |
| MARKETING, LLC | § | |
| _____ | § | |
| | § | Case No. 4:15-cv-275 |
| | § | Consolidated Case No. 4:15-cv-46 |
| RONALD PYKE, *et al.*, | § |   (Administratively Closed) |
| | § | |
|    Appellants, | § | USBC Case No. 14-42120 |
| | § | |
| v. | § | |
| | § | |
| FUNNEL SCIENCE INTERNET | § | |
| MARKETING, LLC, | § | |
| | § | |
|    Appellee | § | |

.

## MEMORANDUM OPINION AND ORDER

Now before the Court is the consolidated set of cross-appeals arising from an involuntary

Chapter 7 bankruptcy case filed against Funnel Science Internet Marketing, LLC (Appellee,

"Funnel Science" or "Alleged Debtor") on the petition of Ronald Pyke, Virginia Rivers, Drop

Visionary Branding ("DVB") and David Rice [1] (collectively, Appellants or "Petitioning

Creditors") and the subsequent dismissal thereof by the United States Bankruptcy Court for the

Eastern District of Texas, Sherman Division.   In the first case, filed as *Funnel Science v. Pyke,*

*Rivers, DVB and Rice*, 4:15cv46, Funnel Science was the titular Appellant and Pyke, *et al.*, the

---

[1] Mr. Rice is not named as a party.   Although Funnel Science named him in its appeal under the original case number 4:15cv46, he was not named as a party in the Petitioning Creditors' appeal under this case number 4:15cv275.   On consolidation, the caption of this case number remained unchanged.   Although Appellee Funnel Science states in its Brief that Mr. Rice should remain as a party, it is not necessary to identify him as such, given the Court's determination herein.

1

Appellees. However, on April 23, 2015, Pyke, *et al.* (but without Rice), subsequently filed the instant case, *Pyke v. Funnel Science*, 4:15cv275. The parties then filed a joint motion to consolidate the two cases and a joint motion to extend the briefing schedule and page limits.

This Court granted both, closed the 4:15cv46 case and consolidated both appeals under the instant Case No. 4:15cv275. Resultantly, the Pyke, *et al.*, parties are the notional Appellants in this case and Funnel Science the Appellee. In fact, as noted above, these are actually cross-appeals and each side has filed an Opening Brief ("Brief") and a Reply Brief ("Reply"). Perhaps it would have been more appropriate to designate the parties as "Appellant" and "Cross-Appellant." However, the Court will continue to address the parties as they are docketed. Appellee Funnel Science filed its Brief on June 25, 2015 (Doc. No. 16).[2] Appellants filed their Brief on July 23, 2015 (Doc. No. 17). Appellee filed its Reply on August 6, 2015 (Doc. No. 18). Appellants filed their Reply on August 21, 2015 (Doc. No. 19). Thus, briefing is complete and the matter is ripe for decision.

At issue are various orders and the Final Judgment entered by the Bankruptcy Court, the Hon. Brenda T. Rhoades, Chief United States Bankruptcy Judge. Appellee appeals from the Order Dismissing Involuntary Bankruptcy (USBC Doc. No. 21) and the Order Denying Motion for Reconsideration (USBC Doc. No. 32), and cross-appeals from the Final Judgment (USBC Doc. No. 33) and the Memorandum Opinion and Orders (USBC Doc. Nos. 47 and 57) on Appellants' two Motions for Reconsideration. Appellants appeal from the Final Judgment (USBC Doc. No. 33) and both Memorandum Opinion and Orders (USBC Doc. Nos. 47 and 57).

---

[2] The Court will refer to docket entries in the Bankruptcy action as "USBC Doc. No. XX" and to docket entries in the instant case as "Doc. No. XX."

The parties have briefed specific issues: six by Appellee and two by Appellants.

Appellate jurisdiction over these cross-appeals is proper in this Court pursuant to 28 U.S.C. § 158(a).

After reviewing the parties' briefs, the record in this case, and the applicable law, the Court **AFFIRMS** the orders of the Chief Bankruptcy Judge.

## I.      BACKGROUND

The following factual background is compiled from the Orders of the Bankruptcy Court and the filings of the parties.

Appellants filed a petition for involuntary Chapter 7 bankruptcy against Appellee on October 5, 2014.   Appellants – referred to as Petitioning Creditors in the Bankruptcy Court and in the parties' own appellate briefs – characterize themselves as "creditors" of Appellee who "believed and continue to believe in the legitimacy of their respective claims against Alleged Debtor [Appellee]."   Appellants' Brief at 8.   The claims are for compensation allegedly owed. On the other hand, Appellee characterizes Appellants as "disgruntled former employees or independent contractors who had previously worked for Funnel Science, and collectively they allege debts totaling a mere $24,731.72."   Appellee's Brief at 6 (footnote omitted).   Appellee recites the background of each individual Appellant and the alleged circumstances leading to his or her discharge or termination, and the relatively small sums that each then demanded from Appellee.   *See generally id.* at 7-13.   Appellee contends it disputed the amounts demanded, in full or in part, over a period of time until Appellants filed the petition for involuntary bankruptcy; Appellants argue that no bona fide disputes existed.

On October 27, 2014, Appellee filed its Motion to Dismiss Chapter 7 Case in the

Bankruptcy Court (USBC Doc. No. 4).[3]   A hearing was set, but then continued on Appellee's motion, prompting Appellants to move for the appointment of a trustee.   Appellants had also served a subpoena duces tecum, which Appellee had moved to quash.   The Bankruptcy Court set the hearing on all three motions on November 10, 2014, and after a partial hearing, continued it to November 14, 2014.   At the November 14, 2014, hearing, the Chief Bankruptcy Judge orally granted Appellee's Motion to Dismiss and issued an Order Dismissing Involuntary Bankruptcy on November 17, 2014 (USBC Doc. No. 21) (and terminated the remaining motions).

On November 26, 2014, Appellee filed a Motion to Partially Reconsider Order Dismissing Bankruptcy Case, pursuant to Fed. R. Civ. P. 59 or, alternatively 60(b)(6),[4] arguing that the Bankruptcy Court should have found that Appellants/Petitioning Creditors had filed the petition for involuntary bankruptcy in bad faith.   The Bankruptcy Court set a hearing on December 16, 2014.   On December 1, 2014, Appellee also filed an Application for Judgment Awarding Fees and Costs Under Section 303(i)(1), seeking $29,127.50 in attorneys' fees and $200.33 in expenses incurred while pursuing its Motion to Dismiss and otherwise defending against Appellants' petition.   The Bankruptcy Court set a hearing on January 6, 2015.

At the December 16, 2014, hearing, the Chief Bankruptcy Judge orally denied the Motion for Partial Reconsideration and issued an Order Denying Motion for Reconsideration on January 6, 2015.   At the January 6, 2015, hearing, the Chief Bankruptcy Judge granted fees on the Motion for Judgment Awarding Fees and Costs, but reduced the amount of attorneys' fees allowed.   On January 8, 2015, the Bankruptcy Court issued a Final Judgment disposing of all

---

[3] For the purposes of this Background, the Court will only cite to the Bankruptcy record if there is a reason to do so or the record cited is significant.

[4] As made applicable by Fed. R. Bankr. P. Rules 9023 and 9024.

claims in Appellee Funnel Science's favor and apportioning the award of fees among three of the Appellants: $1,200.00 from Ginny Rivers; $5,000.00 from Ronald A. Pyke; and $13,800.00 from Jessica Juderman-Van Brunt d/b/a Drop Visionary Branding, for a total award of $20,000.00.

Appellants filed a Motion for Reconsideration Regarding Final Judgment Awarding Fees and Expenses to Alleged Debtor (USBC Doc. No. 36, the "First Motion for Reconsideration"), citing Fed. R. Civ. P. 59 and 60, raising for the first time their argument that Appellee was not authorized to do business in the State of Texas. Pursuant to Tex. Bus. Org. Code § 9.051(b), Appellants argued, Appellee should not have been granted the "affirmative relief" of attorneys' fees awarded for defending against the petition for involuntary bankruptcy. On March 4, 2015, the Chief Bankruptcy Judge issued a Memorandum Opinion and Orders (USBC Doc. No. 47) denying Appellants' First Motion for Reconsideration.

Appellants then filed a Comment Regarding the Court's Memorandum Opinion and Orders on March 10, 2015. The "comment" purported to "clarify a couple of matters in case they may affect the Court's ruling in its Order on Reconsideration." *See* USBC Doc. No. 53 at 2. They asserted that they could not have discovered Appellee's lack of authorization to conduct business in the State of Texas any earlier due to the "blatant perjury" of Appellee's owner. *See* USBC Doc. No. 53 at 3. In support, Appellants quoted two lines of deposition testimony that had been selectively lifted from a longer examination. *See id.* at 2. The following day, March 11, 2015, Appellants filed their Second Motion for Reconsideration (USBC Doc. No. 54), which was substantively a copy of the "Comment" made into the form of a motion, including the claim of "blatant perjury." On April 9, 2015, the Chief Bankruptcy Judge issued a Memorandum Opinion and Orders (USBC Doc. No. 57) on Appellants' "Comment" and the Second Motion for

Reconsideration, denying the motion as well as Appellee's request for sanctions against Appellants' counsel.

The instant cross-appeals ensued. Appellee raises six issues:

1: Whether the Bankruptcy Court erred in finding that Appellants did not file the petition for involuntary bankruptcy in bad faith.

2: Whether the Bankruptcy Court erred by not requiring Appellants to post a bond indemnifying Appellee pursuant to section 303(e) of the Bankruptcy Code.

3. Whether the Bankruptcy Court erred in failing to award Appellee the full amount of attorneys' fees and expenses it requested for defending against the involuntary petition, pursuant to section 303(i)(1) of the Bankruptcy Code.

4. Whether the Bankruptcy Court erred in apportioning the awarded attorneys' fees among three of the Appellants individually instead of holding all of the Petitioning Creditors jointly and severally liable for the full amount of the award.

5. Whether the Bankruptcy Court erred in failing to award Appellee sanctions or its fees and expenses incurred in defending against the Appellants' First Motion for Reconsideration.

6. Whether the Bankruptcy Court erred in failing to award Appellee sanctions or its fees and expenses incurred in defending against the Appellants' Second Motion for Reconsideration.

Appellee's Brief (Doc. No. 16) at 2-4. Appellant raises two issues in addition to addressing each of Appellee's six issues:

1. Whether the Bankruptcy Court erred in finding that Appellee had standing to obtain affirmative relief in the Bankruptcy Court despite the fact that Appellee was not authorized to do business in the State of Texas at the time of the filing of, the hearing on, and the order with respect to Appellee's application for fees.

2. Whether the Bankruptcy Court erred by refusing to grant Appellant's two Motions for Reconsideration.

6

Appellant's Brief (Doc. No. 17) at 2. The Court will address the arguments in turn.

## II.    STANDARD OF BANKRUPTCY APPELLATE REVIEW

This Court reviews the Bankruptcy Judge's findings of fact for clear error. *In re IFS Financial Corp.*, 803 F.3d 195, 203 (5th Cir. 2015); *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d at 701 (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992). The Court conducts a *de novo* review of the Bankruptcy Judge's conclusions of law. *Id.* Mixed questions of law and fact are reviewed *de novo*. *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

## III.    DISCUSSION AND ANALYSIS

As Appellee's Brief was first filed, the Court will first examine the issues it raises.

### A.    Appellee's Issues

### 1.    Appellants' Alleged Bad Faith

The Bankruptcy Court explicitly found that Appellants' claims as purported creditors of Appellee Funnel Science were all subject to bona fide disputes. *See* Order Dismissing Involuntary Bankruptcy (USBC Doc. No. 21) at 1. Accordingly, under 11 U.S.C. § 303(b)(1), Appellants' petition for involuntary bankruptcy had to be dismissed. The Bankruptcy Court also found that Appellants nonetheless did not act in bad faith when they filed the petition. *See* Order Dismissing Involuntary Bankruptcy at 2.

The import of this finding is that Appellee was precluded from obtaining actual or punitive damages. 11 U.S.C. § 303(i)(2) (requiring a finding of bad faith when dismissing an involuntary bankruptcy in order to award actual or punitive damages).

Appellee contends that the Bankruptcy Court erred on two sub-parts: (1) based on the alleged evidence of Appellants' intent and (2) because the Bankruptcy Court applied an incorrect standard of law to the facts of the case. Appellee's Brief at 25. The Court reviews the Bankruptcy Court's determination of bad faith for clear error as a finding of fact. *In re Elliott*, 506 F. App'x 291, 292 (5th Cir. 2013) ("We review the bankruptcy court's factual findings, including its finding of bad faith, for clear error . . . ."); *In re Jacobsen*, 609 F.3d 647, 652 (5th Cir. 2010). Proper analysis requires that the Court examine the second point first.

### a.     Applicable Standard Of Law

Appellee claims that the Bankruptcy Court relied on an incorrect legal standard when it cited *In re Seko Investments, Inc.*, 156 F.3d 1005 (9th Cir. 2003). Appellee's Brief at 34. The Bankruptcy Court cited *In re Seko* as part of its discussion on the issue of whether counterclaims unrelated to the transactions involved in the involuntary bankruptcy could be bona fide disputes, and whether Appellants and their counsel had been confused on that point. Appellee contends that an intervening change to the Bankruptcy Code in 2005 and decisional authority meant that the Bankruptcy Court applied an incorrect standard of law by citing to *In re Seko*.

As an initial matter, the Court observes that counsel for Appellee stated to the Chief Bankruptcy Judge during the December 16, 2014, hearing on its Motion to Partially Reconsider Order Dismissing Bankruptcy Case that,

> We're not arguing that Your Honor used an incorrect standard in deciding
> whether or not there was a bona fide dispute. What we are arguing here is that
> after Your Honor found that there was a bona fide dispute, Your Honor took it a
> step further and cited to this legal confusion on the issue of offsetting
> counterclaims versus recoupment. And that because of the legal conclusion - -
> confusion, Your Honor found the petitioning creditors did not act in bad faith,
> because they had a reasonable belief that maybe if the debtor's claims, or the
> alleged debtor's claims were counterclaims, then it wouldn't subject to them to a
> bona fide dispute based on this pre-2005 law.

*See* FS000570-FS000571.[5]  Notwithstanding this statement, counsel now argues that the Chief

Bankruptcy Judge *did* use an incorrect legal standard. The only difference is that Appellee here

conflates the determination of a bona fide dispute with the separate determination of whether the

involuntary bankruptcy petition was filed in bad faith.

Nonetheless, Appellee admits that the Bankruptcy Court correctly determined that the

bankruptcy was subject to bona fide disputes as to Appellants' claims. Appellee's Brief at

24-25. In doing so, Appellee cited the objective standard in *Matter of Sims*, 994 F.2d 210, 221

(5th Cir. 1993) (citing *In re Lough*, 57 B.R. 993 (Bankr. E.D. Mich. 1986)). In fact, the

Bankruptcy Court also explicitly relied on *Sims*:

> Now, turning to the bad faith issue. It appears to the Court that there seems to be
> some legal confusion about the distinction between transactionally related
> defenses and claims, which I think in the 5th Circuit we call recoupment, if you
> will, versus counterclaims on unrelated claims that could give rise to two
> independent claims that may be entitled to offset, but does not necessarily negate
> the underlying claim. And I think that is the issue that is being addressed in part
> by the Seko, S-e-k-o, Investments case and the 5th Circuit in the Sims case. And
> the existence of this legal confusion and legal arguments are just that. I don't
> think that in this case that the petitions were filed in bad faith and the Court so
> finds.

*See* FS000559-FS000560. Appellee ignores this point entirely and insists that because the

Bankruptcy Court cited *In re Seko Investment, Inc.*, 156 F.3d 1000 (9th Cir. 1998) as a factor in

determining that Appellants had not acted in bad faith, it must have relied on an incorrect standard of law. That is because in *Credit Union Liquidity Servs., LLC v. Green Hills Dev. Co.*, 741 F.3d 651, 657-58 (5th Cir. 2014), the Fifth Circuit found that the 2005 amendments to the Bankruptcy Code invalidated the Ninth Circuit's holding that "when the debtor's counterclaim arises from a separate contract, it does not 'put in doubt' the creditor's claims for the purposes of § 303(b)."

Appellee previously raised this argument in its Motion for Partial Reconsideration to the Bankruptcy Court. During the hearing on that motion, the Chief Bankruptcy Judge stated:

> So the Court did recognize the change in 2005 in making the conclusion that the claims here were subject of a bona fide dispute. Okay?
>
> Then the next question is, whether that - - the creditors here acted in bad faith. And the Court's point there, and the Court's point now is that the changes to the law that you are talking about and the 5th Circuit's ruling about what that law means was in 2014. And it is apparent to the Court and I guess I'm going to have to be blunt, because I tried not to be at the last hearing, that counsel for the debtors, or counsel for the creditors was confused then and is still confused about what that means and what the 5th Circuit meant, or what the 2005 change meant, because the 2005 change does not go into those issues. It just has, I think three more words that were added. But the 5th Circuit's ruling on what it means and its rejection of Secco[6] occurred in 2014. And it is clear to the Court that counsel for the creditors was confused and is still confused about what it means. Okay?
>
> And given that counsel is confused, I'm pretty certain the creditors were, themselves, confused. And it is the Court's ruling that the creditors did not act in bad faith. And I have no evidence that the creditors acted in bad faith. All I have is the evidence that they filed a case and that the parties had a dispute about some matters. That's the only evidence. And the Court is finding as a matter of fact based on the evidence before the Court that the creditors did not act in bad faith.

---

[5] Referring to Funnel Science's Bates-labeled hearing transcript attached to its Appellee's Brief.

[6] As reported in the hearing transcript, referring to *In re Seko*.

*See* FS000577-FS000578. The Chief Bankruptcy Judge thus made clear that she was *not* relying on *In re Seko* for any purpose other than making a finding of fact: that Appellants' counsel was confused by the effect of the 2005 change as explained by the Fifth Circuit in its 2014 *Green Hills* decision, before filing the petition for involuntary bankruptcy that same year. Appellee's contention that the Bankruptcy Court *applied* the *In re Seko* standard is misplaced.

Appellee nonetheless argues that under various tests used in different Bankruptcy Courts outside the Fifth Circuit, Appellants acted in bad faith because they were aware that a bona fide dispute existed at the time that they filed their petition. *See* Appellee Brief at 26-27 (citing, *inter alia*, *In re Better Care, Ltd.*, 97 B.R. 405, 411 (Bankr. N.D. Ill. 1989), *In re Tichy Elec. Co., Inc.*, 332 B.R. 364, 373 (Bankr. N.D. Iowa 2005), and *In re Cannon Express Corp.*, 208 B.R. 450 (Bankr. W.D. Ark. 2002)). This argument relates to Appellee's first point.

**b.      Evidence Of Appellants' Intent**

Appellee offers selected emails and excerpts of testimony during the hearing on its Motion to Dismiss in an attempt to establish bad faith on the parts of Ronald Pyke, Virginia Rivers, Jessica Juderman-Van Brunt (named herein under her d/b/a of DVB) and David Rice. The fundamental argument is that Appellants acted in bad faith because they knew of the existence of bona fide disputes over their claims of compensation owed when they petitioned for the involuntary bankruptcy.

In that light, Appellee contends Mr. Pyke was aware of a bona fide dispute over his claim for money owed him as Funnel Science's Fractional CFO based on emails he had received stating that its owner, Alex Fender, "disagrees with this amount" and thought Mr. Pyke's "work is a scam and I will be glad to let the cat out of the bag." Appellee's Brief at 28 (citing record).

The remainder of Appellee's argument concerns whether Mr. Pyke had negotiated additional compensation and an agreement to justify the payment demanded. *Id*. at 29.

Next, Appellee contends that Ms. Van Brunt's testimony indicates she was aware of a dispute over her claim for $16,196.75, and that Mr. Fender believed that she was overcharging and being paid too much. Appellee Brief at 29 (citing record). Appellee alleges Ms. Van Brunt's objective was to use the bankruptcy to obtain the payment she claimed. *Id*. at 30.

Appellee next asserts that Ms. Rivers knew that Appellee had issues with her performance and that she knew her services had been terminated for that performance. *Id*. at 30-31 (citing record). Further, that she initially filed an overstated claim with the original petition for involuntary bankruptcy, which she abruptly amended in the midst of the hearings on Appellee's Motion to Dismiss the bankruptcy. *Id*. at 31.

Finally, Appellee claims that Mr. Rice had been terminated for committing time card fraud and then accessed Funnel Science computers and deleted emails between him and the company's clients and deleted the clients' Bing accounts. *Id*. at 31 (citing record).[7]

All of this, Appellee argues, indicates bad faith on Appellants' part under either the "improper use" test (citing *In re Tichy*, 332 B.R. at 373 and *In re Better Care, Ltd.*, 97 B.R. at 411) or the "improper purpose" test (*id*.); and that filing an involuntary petition in order to collect a debt is an improper use of the bankruptcy process (citing *Cannon Express Corp.*, 280 B.R. at 455).

---

[7] Appellee also claims that Appellants contacted its customers, attempted to interfere with its business operations, sent "onerous subpoenas" and filed a "baseless motion" seeking appointment of a trustee after Appellee requested a continuance for a hearing. *Id*. at 32 (citing record). None of these points has any bearing on Appellee's underlying claim that Appellants acted in bad faith because they were aware of bona fide disputes when they filed the petition.

However, Appellee badly misses the point. The Bankruptcy Court did not absolve or excuse any bad faith on the part of Appellants. Instead, the Chief Bankruptcy Judge found as a matter of fact that Appellants' counsel (and, hence, Appellants) were confused as to the effect of *Green Hills* and the 2005 Bankruptcy Code amendments discussed above. In other words, they were confused whether the disputes over Appellants' claims constituted "bona fide disputes" within the meaning of § 303(b), which would render Appellants ineligible to file the petition.

It is undisputed that Appellants consulted counsel before filing the petition. Mr. Pyke testified that after he heard that there were others beside himself who "were not getting paid by Funnel Science," he and Ms. Van Brunt conferred with counsel as to the monies Appellee allegedly owed them and that, *as a result of* that consultation they decided to file the petition for involuntary bankruptcy. FS000299. Appellee admits that Ms. Rivers consulted with counsel before filing the petition for involuntary bankruptcy. Appellee's Brief at 31. Furthermore, Counsel for the Appellants stated in colloquy with the Bankruptcy Court that "[w]e sent this involuntary petition around" and that Ms. Rivers had signed it because she had provided information to Mr. Pyke that Mr. Pyke provided to counsel. FS000548.

In other words, consistent with the Bankruptcy Court's findings of fact, Appellants obtained the advice of counsel before filing their petition. The Bankruptcy Court further found as a matter of fact that Appellant's counsel was obviously confused about the standard governing whether those alleged debts, and Appellee's responses to them, constituted bona fide disputes.

Responding to this finding, Appellee accuses counsel for Appellants of committing "malpractice" and that Appellants therefore should only "have recourse against their counsel for malpractice." Appellee's Brief at 38. The Court disagrees.

The Court is left with the "definite and firm conviction that a mistake has" *not* been committed, and thus there was no clear error, in the Bankruptcy Court's finding of no bad faith. *In re Dennis*, 330 F.3d at 701. Appellee's first contention is without merit.

## 2. Bond

Appellee next contends that the Bankruptcy Court abused its discretion when it did not grant Appellee's request for a bond on the involuntary bankruptcy, pursuant to § 303(e). *See* Appellee Brief at 39; *see also* USBC Doc. No. 21 (awarding attorneys' fees without imposing a bond). This Court reviews such claim of error for abuse of discretion. *In re Hutter Assocs., Inc.*, 138 B.R. 512, 516 (Bankr. W.D.Va. 1992). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Allen v. C&H Distributors, L.L.C.*, - - - F.3d - - - -, 2015 WL 9461591, at *2 (5th Cir. Dec. 23, 2015).

Appellants contend in opposition that Appellee did not serve notice of a motion for a bond and no hearing was conducted. Both parties agree that the basic requirements for a bond under § 303(e) are (1) notice; (2) a hearing; and (3) cause. Appellee Brief at 39 (citing *In re Apollo Health Street, Inc.*, 2011 WL 2118230, at *2 (Bankr. D.N.J. May 23, 2011)); Appellants' Brief at 34. *See also* 11 U.S.C. § 303(e) ("After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.").

Appellants' opposition is baseless. When Appellee filed its Motion to Dismiss the involuntary bankruptcy before the Bankruptcy Court, it included a dedicated section entitled "Request for Bond from Petitioners." *See* USBC Doc. No. 4 at 14. It explicitly cited §§ 303(e)

and (i), the latter of which is discussed further below. It requested the Bankruptcy Court to conduct a hearing on the request and sought an order requiring Appellants to post a $100,000 bond "for Funnel Science's reasonable protection." USBC Doc. No. 4 at 14. There is no question that the Motion to Dismiss was served on opposing counsel and therefore notice was given. *See id*. at 15 (Certificate of Service via CM/ECF). All counsel appeared at the hearing on the motion, during which arguments as to a bond were addressed to the Bankruptcy Court. *See* FS000253; FS000308 (inquiring as to Appellants' ability to pay a $20,000 judgment with the Bankruptcy Court sustaining an objection for speculation); FS000536 (counsel raising the issue of a bond and stating that Funnel Science had "incurred significant damages" in relation to it); FS000549 (counsel for Appellants acknowledging that "the Court certainly is authorized to impose a bond" and that Appellee requested a bond in the amount of $100,000); FS000552. Thus, the notice and hearing requirements were met.

Turning to § 303(i) as the basis for Appellee's recovery, the statute states:

(i)  If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment--

(1) against the petitioners and in favor of the debtor for--

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for--

(A) any damages proximately caused by such filing; or

(B) punitive damages.

This Court has already upheld the Bankruptcy Court's finding that Appellants did not file the petition for involuntary bankruptcy in bad faith. Accordingly, § 303(i)(2) does not apply. The Bankruptcy Court awarded attorneys' fees under § 303(i)(1), which could apply to Appellee's request for a bond under § 303(e).

However, after discussing notice and a hearing, Appellee's entire argument on appeal is a brief paragraph focused on "cause":

> "Cause" to impose a bond on the Petitioning Creditors existed in this case and the evidence needed by the Bankruptcy Court to find such cause was attached as exhibits to Funnel Science's Motion to Dismiss. As discussed above, the evidence is overwhelming that the Petitioning Creditors filed the involuntary petition in bad faith and for the improper purpose of harassing Funnel Science, causing it to incur fees and damages, and disrupting its business by abusing the bankruptcy process as an improper litigation and collection tactic. Their counsel also filed successive, meritless motions for reconsideration in violation of 28 U.S.C. § 1927 and Fed. R. Bankr. P. 9011. All of this resulted in substantial damage to Funnel Science, for which Funnel Science now has questionable recourse. The bankruptcy Court abused its discretion when it declined to impose a bond in this case. But it is not too late. A bond may still be ordered. To the extent the Court remands this case to the Bankruptcy Court for any reason, it should render a decision that the Petitioning Creditors must post a bond immediately.

Appellee Brief at 40 (footnotes omitted). Granted, Appellee mentions "fees" in this argument, but it is clear that the focus is on the "substantial damage" it claims is suffered by result of the involuntary bankruptcy. Because the Court has affirmed the Bankruptcy Court's finding of no bad faith, however, actual and/or punitive damages are not recoverable here.

Appellee has given virtually no justification for a bond on attorneys' fees. The requested $100,000 bond is grossly in excess of any amount needed to secure the attorneys' fees. Moreover, Appellee has offered no evidence or allegation, here or in the Bankruptcy Court, that the three individuals will not pay amounts ranging from $1,200.00 to $13,800.00. In that regard,

Appellee's contention is inadequately briefed on appeal and is therefore waived. *Geaux Live Digital, L.L.C. v. Taylor and Ross Entertainment, L.L.C.*, 590 F. App'x 413, 414 (5th Cir. 2015) (per curiam) (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.")).

Furthermore, imposition of a bond is permissive under the statute, not mandatory: "the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court *may* later allow under subsection (i) of this section." 11 U.S.C. § 303(e) (emphasis added); *see In re Age Refining, Inc.*, 801 F.3d 530, 545 (5th Cir. 2015) ("may" denotes discretionary, permissive action by the Bankruptcy Court). Given its correct finding of fact on the issue of bad faith and the lack of briefing as to the ability or intention of Appellants to pay the attorneys' fees awarded, the Bankruptcy Court properly exercised its discretion in not granting the request for a bond. This contention is without merit.

### 3. Amount Of Attorneys' Fees For Defending Against Involuntary Bankruptcy

Next, Appellee appeals the Bankruptcy Court's reduction of its award of attorneys' fees from the requested $29,127.50 (plus $200.33 in costs)[8] to a total of $20,000.00, as apportioned. Appellee's Brief at 41. The governing statute is 11 U.S.C. § 303(i), and is quoted in full in the preceding Section III.A.2, above. On appeal, the Court reviews the Bankruptcy Court's award of attorneys' fees for abuse of discretion. *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

A grant of attorneys' fees is permissive under the statute, not mandatory: "the court *may* grant judgment" for fees. 11 U.S.C. § 303(i) (emphasis added); *see In re Age Refining, Inc.*, 801 F.3d at 545. "A bankruptcy court has discretion under 11 U.S.C. § 303(i)(1) to grant costs and

---

[8] Appellee bundles these two amounts together in its brief, citing an overall request of

attorneys' fees when it dismisses an involuntary bankruptcy petition without the consent of all of the parties . . . ." *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 661.

Notwithstanding, Appellee also cites Bankruptcy Court cases from out-of-Circuit establishing a "rebuttable presumption" that fees will be awarded, which may be overcome in a burden-shifting scheme requiring Appellants to "establish[ ] that factors exist that overcome the presumption in favor of awarding fees under § 303(i) and that, based upon the totality of the circumstances, no attorney's fees should be awarded." Appellee's Brief at 41-42 (quoting *In re Express Car & Truck Rental, Inc.*, 440 B.R. 442, 431 (Bankr. E.D. Pa. 2010)). However, Appellee has cited no controlling precedent in this Circuit to that effect. Nonetheless, some Bankruptcy Courts in the Texas federal districts recognize the presumption and the totality of the circumstances standard for overcoming it. *See, e.g.*, *In re Clean Fuel Technologies II, LLC*, 544 B.R. 591, 602 (Bankr. W.D. Tex. 2016) (citing, *inter alia*, *In re TRED Holding, L.P.*, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010)). The Court will assume without deciding that such a rebuttable presumption applies here.

To that end, Appellants filed an Objection to Application for Fees in the Bankruptcy Court. *See* USBC Doc. No. 29; FS000153-FS000163. In it, Appellants state that "none of counsel's individual tasks appear to be unreasonable . . . ." Appellee quotes this passage at least twice. *See*, *e.g.*, Appellee's Brief at 42. However, Appellee has simply selected a small portion of a quote, taking it out of context. The full sentence states, "[a]lthough none of counsel's individual tasks appear to be unreasonable, given the size and complexity of this matter, the amount of the fees are unjustified." FS000161. Appellants went on to argue that fees for

---

$29,327.83.

certain tasks should not be awardable. Further, that Appellee "has simply overworked this case," *id*., giving the Bankruptcy Court the following specific examples:

(1) Close to 8 hours was spent on the preparation and filing of a motion to quash that was unnecessary and objected to every single request for documents. Alleged Debtor subsequently produced over 2,000 documents for narrow discovery requests.

(2) $7,780 was accrued with matters related to discovery, which was limited to attending depositions and reviewing documents to be produced; additionally, Alleged Debtor seeks $300 for photocopying and other administrative services.

(3) $2,462.50 was accrued in preparing a motion to reconsider;

(4) $2,312.50 (11.4 hours) was spent in preparing the fee application.

*Id*. (footnote omitted). On appeal, Appellee simply ignores these details and instead claims that ". . . the record is clear that Funnel Science incurred all of its attorneys' fees in defending the involuntary petition, responding to and defending against onerous and irrelevant discovery and subpoenas, and defending against a baseless motion filed by the Petitioning Creditors seeking the appointment of a trustee." Appellee Brief at 42-43 (footnote omitted). However, Appellee does not further describe how these tasks justify the sum it seeks. Rather, it asserts only that Appellants used "unreasonable and vexatious[9] litigation tactics," causing Appellee to incur fees.

Under the totality of the circumstances, the Chief Bankruptcy Judge acted within her discretion to take these offsetting factors into account when deciding an appropriate reduced award of attorneys' fees. There was no abuse of discretion and this contention is without merit.

---

[9] As discussed further below, this is not the only time Appellee intemperately refers to Appellants as "vexatious litigants." That term often refers to a problematic, high-volume filing *pro se* litigant who "has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). This Court affirms the Bankruptcy Court's finding of no bad

### 4.     Apportioning Attorneys' Fees Among Appellants

Appellee next complains that the Bankruptcy Court erred when it apportioned among the individual Appellants the attorneys' fees it awarded to Appellee, instead of making all Appellants jointly and severally liable for the full amount.   Appellee asserts that "a bankruptcy court has discretion to hold all or some petitioners jointly or severally liable for costs and fees, to apportion liability according to petitioners' relative responsibility or culpability, or to deny an award against some or all petitioners, depending on the totality of the circumstances."   Appellee Brief at 46 (quoting *In re Maple-Whitworth*, 556 F.3d at 746).   On that basis, this Court reviews the Bankruptcy Court's decision for abuse of discretion.

The Bankruptcy Court did not explain how it arrived at the amounts awarded in the case of each Appellant.   The parties speculate that the amounts reflect the size of the three individuals' respective claims against Appellee,[10] and that may be the case.   If so, it represents an approach to considering the "totality of the circumstances," and not merely an "arbitrary" effort as Appellee suggests.   Appellee's Brief at 46.   Appellee repeats its arguments of Appellants' bad faith, *see id*. at 46-47, which this Court has found to be without merit.   Appellee ends its brief and otherwise-unsupported argument with the conclusory sentence, "Accordingly the Bankruptcy Court abused its discretion by allocating the fees between them, apparently based upon the relative amounts of their claims."   *Id*. at 47.   The Court finds no such abuse on the Bankruptcy Court's part.   This contention is without merit.

---

faith on the part of the Appellants and further finds there is no vexatious litigation here.

[10] In an insightful footnote, Appellee adds the respective claims for payment by Mr. Pyke, Ms. Rivers and Ms. Van Brunt and calculates that each individual's claim is 26.7%, 3.3%, and 69.9% of the total, respectively.   Appellee asserts, and Appellants do not dispute, that these percentages are close to the percentages of the total attorneys' fees award apportioned to each individual.

### 5 & 6. Sanctions Or Fees For Defending Against Appellants' First And Second Motions For Reconsideration

Finally, Appellee contends that the Bankruptcy Court erred when it did not award attorneys' fees or sanctions against Appellants and their counsel after it denied Appellants' First and Second Motions for Reconsideration, pursuant to § 303(i), 28 U.S.C. § 1927, or Fed. R. Civ. P. 11/Fed. R. Bankr. P. 9011. Appellee Brief at 48, 51. In both Motions for Reconsideration, Appellants asserted that the Bankruptcy Court erred in awarding attorneys' fees to Appellee because it was not registered and authorized to do business in Texas under Tex. Bus. Org. Code § 9.051(b). Appellee filed oppositions to both Motions for Reconsideration, and sought sanctions in both on the three bases listed above. It argued that Appellants deliberately misrepresented evidence, made offensive allegations that owner Alex Fender committed "blatant perjury," based the motions on information that was available to them before entry of Final Judgment and were simply attempting to harass Appellee. The Bankruptcy Court denied both Motions for Reconsideration in separate Memorandum Opinion and Orders issued March 4, 2015 (USBC Doc. No. 47) and April 9, 2015 (USBC Doc. No. 57), respectively. The Bankruptcy Court did not grant sanctions under any of the three alternatives that Appellee proposed. This Court reviews the award of attorneys' fees and sanctions for abuse of discretion. *Meyers v. Textron Fin. Corp.*, 609 F. App'x 775, 777 (5th Cir. 2015); *Greer v. Richardson I.S.D.*, 471 F. App'x 336, 339 (5th Cir. 2012) (quoting *Edwards v. Gen Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1988); *In re Cahill*, 428 F.3d at 539.

The Court has already addressed the awarding of attorneys' fees under § 303(i), above. The Court may also "award costs, expenses, and attorney's fees against attorneys who multiply

proceedings vexatiously, 28 U.S.C. § 1927; [or] sanction a party and/or the party's attorney for filing groundless pleadings, motions, or other papers, Fed. Rule Civ. Proc. 11 . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 62 (1991). Alternatively, "a federal court may ignore these provisions and exercise inherent power to sanction bad-faith misconduct 'even if procedural rules exist which sanction the same conduct.'" *Id.* at 62-63. Each alternative is discretionary.

First, "A court must make a specific finding of bad faith before using its inherent power to impose sanctions." *Meyers*, 609 F. App'x at 779 (citing *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001)). Here, the Bankruptcy Court found that Appellants did not act in bad faith. This Court has affirmed that finding and further finds no bad faith in Appellants' two Motions for Reconsideration.

Second, sanctioning under 28 U.S.C. § 1927 requires conduct not present in this case. In *Meyers v. Textron Fin. Corp.*, the Fifth Circuit affirmed the imposition of sanctions under 28 U.S.C. § 1927 by the District Court on plaintiffs and their counsel. 609 F. App'x at 780. There, plaintiffs and counsel had serially filed a second complaint under a different name alleging fraud in a sales transaction when their prior claim had been dismissed; had knowingly made false statements and attempted to defraud the court; had disobeyed numerous orders of the court; and failed to appear for scheduled hearings. *Id.* at 776-78. Accordingly, sanctions under 28 U.S.C. § 1927 were appropriate. That is not the case here. Appellants did not file serial cases (which is a hallmark of a true vexatious litigant) and were within their rights to seek reconsideration of the Bankruptcy Court's Final Judgment. Even if they improperly filed a successive Second Motion for Reconsideration under Fed. R. Civ. P. 59(e) as the Bankruptcy Court found, that is not necessarily the case where Appellants filed under Fed. R. Civ. P. 60 as an

alternative.  Further, the second motion expanded Appellants' original argument and did not rise to the level of "unreasonably and vexatiously" multiplying the proceedings.  *See* § 1927.  Additionally, Appellee's opposition to it repeats substantial portions of what Appellee wrote in its opposition to the First Motion for Reconsideration, with the addition of argument addressing the deposition of Alex Fender.  *Compare* FS000188-FS000198 (first objection) *with* FS000230-FS000243 (second objection).  Moreover, the Bankruptcy Court admonished Appellants for having "improperly" filed successive motions for reconsideration, and further admonished Appellants for the casual use of the "freighted" term "perjury."  *See* Memorandum Opinion and Orders at 4 (FS000663).  An admonishment is often appropriate prior to imposing sanctions.  The Bankruptcy Court did not abuse its discretion with regard to § 1927.

Third, Rule 11 of the Federal Rules of Civil Procedure, and its counterpart Fed. R. Bankr. P. 9011, provide that "by signing and submitting a pleading to the court, an attorney represents that, among other things, 'the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'"  *Barrett-Bowie v. Select Portfolio Servicing, Inc.*, - - - F. App'x - - - -, 2015 WL 7575651, at *2 (5th Cir. Nov. 25, 2015) (quoting Fed. R. Civ. P. 11(b)(3)).  "The moving party must serve the non-moving party with a proposed motion for sanctions at least twenty-one days before filing it with the court, and the motion may not be filed if the non-moving party withdraws or corrects the challenged claim during that 'safe harbor' period."  *Id.* (citing Rule 11(c)(2) and *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995)).  In this case, it is clear from the timing of the papers in the Bankruptcy Court that Appellee did not comply with the "safe harbor" requirement of Rule 11.  Even though a court may impose Rule 11 sanctions

*sua sponte*, *see* Fed. R. Civ. P. 11(c)(1)(B), doing so remains within the discretion of the court. In this case, Appellee alleges that Appellants deliberately misrepresented evidence to the Bankruptcy Court, in the form of an out-of-context passage from the deposition of Alex Fender. However, the Bankruptcy Court found that Mr. Fender was expressing a lay opinion as to whether Funnel Science was authorized to do business in Texas and that counsel for Appellants had not investigated the facts after becoming aware that Funnel Science was not listed on the Texas Secretary of State website. Memorandum Opinion and Orders at 3 (FS000662). That renders it uncertain as to whether a deliberate misrepresentation occurred. Accordingly, the Bankruptcy Court was within its discretion when it denied Appellee's request for Rule 11 sanctions.

Finally, a finding of bad faith is also necessary for recovery of damages under 11 U.S.C. § 303(i)(2), as discussed in greater detail above. As for attorneys' fees under § 303(i)(1), such award remains within the discretion of the Bankruptcy Court and under the totality of the circumstances. *In re Clean Fuel Technologies II, LLC*, 544 B.R. at 602. Given the totality of circumstances just discussed, the Bankruptcy Court did not abuse its discretion under § 303(i)(1).

For the reasons stated above, this contention is without merit.

### B. Appellants' Issues

Appellants raise two issues of their own. They are essentially two aspects of the same point and the Court will address them together.

### 1 & 2.  Appellee's Standing To Obtain Affirmative Relief; Appellants' Motions For Reconsideration

In these two issues, Appellants first contend that the Bankruptcy Court erred in granting Appellee "affirmative relief" in the form of attorneys' fees because Appellee was not registered with the State of Texas pursuant to Tex. Bus. Org. Code § 9.051.   Therefore, they contend, Appellee had no standing to seek the fees (Issue No. 1).   Appellants' Brief at 21.   Next, Appellants argue, the Bankruptcy Court's error extended to denying both of Appellants' two Motions for Reconsideration on this point (Issue No. 2).   *Id*. at 29.   The Court reviews issues of standing *de novo*.   *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2010).

The Texas statute states:

> A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

Tex. Bus. Org. Code § 9.051.   Appellants contend that failure to comply with § 9.051 precludes a business entity from obtaining "affirmative relief" in an action in a Texas court, citing *Kutka v. Temporaries, Inc.*, 568 F. Supp. 1527, 1532 (S.D. Tex. 1983) (analyzing precursor to § 9.051, Tex. Bus. Corp. Act, art. 8.18) ("Article 8.18 precludes a foreign corporation, which is transacting, or has transacted business in Texas, without a certificate of authority, from obtaining affirmative relief in the courts of Texas on any matter arising out of the transaction of intrastate[11] business.").   Appellants assert that § 9.051 applies to an action in a Texas federal court, citing

---

[11] "An 'intrastate transaction' is a commercial transaction that occurs entirely within one state, whereas an 'interstate transaction' is a commercial transaction that occurs between any point in a state and any point outside of that state, or between points within the same state if the transaction passes through or involves any area outside of the state."   *Terroco Indus. Ltd. v. American Home*

*Waggener Paint Co. v. Paint Distributors, Inc.*, 228 F.2d 111 (5th Cir. 1955) and *Environmental Coatings, Inc. v. Baltimore Paint and Chemical Co.*, 617 F.2d 110 (5th Cir. 1980) (analyzing similar Mississippi statute). *See also Kutka*, 568 F. Supp. at 1532 ("This applies as well to a federal district court sitting in diversity.") (citing *Waggener Paint Co.*, 228 F.2d at 113). The statute does not, however, preclude a business entity from defending itself in an action. *Id.*; Tex. Bus. Org. Code § 9.051(c)(2).

Appellants have presented evidence in the form of a Certificate of Fact (also known as a Certificate of No Record) dated January 15, 2015, from the Texas Secretary of State showing that Appellee Funnel Science was not registered to transact business in Texas. FS000182-FS000183. Ultimately, Appellants argue that the Texas statute, therefore, precludes Appellee from obtaining the "affirmative relief" of attorneys' fees.

Appellee does not dispute that it is a Nevada limited liability company, but asserts that it has since registered with the Texas Secretary of State. Appellee's Reply at 9-10 and Ex. 2 (Application for Registration of a Foreign Limited Liability Company filed in the Office of the Secretary of State of Texas and dated March 25, 2015). It essentially asserts that, to the extent § 9.051 applied in this instance, such registration has cured the issue.

More to the point, however, Appellee points out in detail what *Kutka*, cited by Appellants, mentions: that § 9.051 applies to cases in Texas federal courts under *diversity* jurisdiction. The Bankruptcy Court also addressed this point in its Memorandum Opinion and Orders on Appellants' Second Motion for Reconsideration:

> Furthermore, the petitioning creditors' argument that § 9.051 of the Texas
> Business Organizations Code deprived the debtors of standing to seek sanctions

*Assurance Co.*, 2009 WL 901488, at *3 (E.D. Tex. Mar. 30, 2009).

under § 303(i) of the Bankruptcy Code is without merit. Section 9.051(b) provides: "A foreign filing entity . . . may not maintain an action, suit, or proceeding in a court of this state . . . on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter." This is known as a "door-closing" statute, and, in the federal context, it applies to *diversity actions* inasmuch as an action barred in state courts cannot be brought as a federal *diversity* suit. *See Cleckner v. Republic Van and Storage Co.*, 557 F.3d 776, 769 (5th Cir. 1977). The present case is a bankruptcy case arising in a federal court under federal law, and the alleged debtor's request for sanctions is based on and arises from § 303(i) of the Bankruptcy Code. "[I]t is hard to see how a *federal* court adjudicating an action arising out of *federal* law can be considered a Court 'of' the State of Texas." *Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Inc.*, 2014 WL 1998053 at *2 (E.D. Tex. May 15, 2014) (emphasis in original). In their motions for reconsideration, the petitioning creditors failed to cite this Court to authority establishing that § 9.051(b) has any application to a request for sanctions under § 303(i).

Memorandum Opinion and Orders (USBC Doc. No. 57) at 3-4 (emphasis added); FS000662-FS000663. Nor have Appellants cited on-point authority that § 9.051 applies to an award of attorneys' fees under § 303(i). Relatedly, however, the Fifth Circuit has observed:

These cases—pre-dating the 1958 amendment to the Judicial Code which added that a corporation is to be deemed a citizen of both its state of incorporation and its "principal place of business"[ ]—stand only for the proposition that when a local law precludes a party's recovery in state court, that party is likewise barred from pursuing its action *in diversity* in the federal courts situated in that state. Their holdings thus reflect the basic principle of Erie that a federal court sitting *in diversity* is bound to apply the law of the state in which it sits;[ ] they do not imply that the determination of a party's citizenship *for diversity purposes* is governed by state law. Thus, for example, a foreign corporation conducting business in Texas without a certificate of authority from the Texas Secretary of State will be barred, under Article 8.18, from filing suit in either Texas state court or in a federal court sitting there *in diversity*, on any matter related to its intrastate business activity,[ ] irrespective of whether the totality of its corporate activity indicates that its principal place of business is Texas. In such circumstances, a federal forum is foreclosed, not because of the absence of complete *diversity*, but because a federal court applying Texas law would necessarily conclude that it lacked authority to entertain the action.

*Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 881-82 (5th Cir. 2004) (footnotes omitted, emphasis added) (discussing predecessor to § 9.051). Obviously, the instant controversy did not arise out of a federal action based on diversity jurisdiction, but on bankruptcy jurisdiction.

Appellants cite a selective excerpt from *Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949) to bolster their argument. However, *Woods* itself was a diversity jurisdiction case. Examining the full passage that Appellants only partially quote:

> The York case was premised on the theory that a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court *in a diversity case*; [that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court.] The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the *diversity jurisdiction of the federal courts*. It was that element of discrimination that *Erie R. Co. v. Tompkins* was designed to eliminate.

*Woods*, 337 U.S. at 538 (emphasis added; brackets added indicating the portion selectively quoted by Appellants). Appellants have offered no convincing argument that § 9.051 applies in the bankruptcy context.

Moreover, a business entity unregistered under § 9.051 and haled into court may still assert a compulsory counterclaim, as the Bankruptcy Court recognized. Memorandum Opinion and Orders (USBC Doc. No. 57) at 4 n.3; FS000663 (citing *Environmental Coatings, Inc. v. Baltimore Paint and Chemical Co.*, 617 F.2d 110 (5th Cir. 1980) (per curiam) (analyzing a similar Mississippi statute)). Further, Texas courts have recognized the availability of affirmative relief in such a counterclaim. *See State v. Cook United, Inc.*, 463 S.W.2d 509, 516 (Tex. Civ. App. - Fort Worth 1971), *modified on other grounds*, 469 S.W.2d 709 (Tex. 1971) ("Appellee's right to defend such suit included the right to cross-claim and obtain affirmative

judgment on such claim where the claim so asserted is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State.") (quoting *State v. Martin*, 347 S.W.2d 809 (Tex. Civ. App. - Austin 1961, writ ref., n.r.e.)). The Fort Worth Court of Appeals also noted that the appellate courts of New York had interpreted statutes similar to the former art. 8.18 and found that "a foreign corporation which has been sued in a New York court can bring a cross-action in such case against plaintiff and can also defend such case." *Cook United*, 463 S.W.2d at 515 (citing New York cases). There is no principled reason that Appellee could not do the same here.

The Bankruptcy Court also pointed out that Appellants failed to challenge Appellee's authority to request sanctions and fees against them prior to the entry of Final Judgment. *Id*. at 2. In the Second Motion for Reconsideration, Appellants presented a selectively edited transcript excerpt from the deposition of Alex Fender, owner of Appellee Funnel Science, which included only counsel's question if Appellee was "authorized to do business in Texas," and Fender's response that it was. *Id*. Appellants therefore argued to the Bankruptcy Court that Fender had committed "blatant perjury" and concealed from them that Funnel Science was not registered and authorized to do business in Texas from them. The full exchange, however, goes on to reveal that counsel for Appellants stated on the deposition record that he had looked at the Texas Secretary of State's website and did not see Appellee listed. Fender responded that he was not sure why. *Id*. In other words, counsel for Appellants was aware at the time of the deposition – conducted on November 6, 2014 – that Appellee was not registered to do business in Texas.

The Chief Bankruptcy Judge aptly observed that "[a]n accusation of perjury is not a substitute for failing to investigate the operative facts," *id*. at 3, especially when counsel was already aware of Appellee's unregistered status and knew he was asking a lay person for his interpretation of his business' legal status to conduct business in Texas.[12] In this case, this Court finds Appellants' "standing" argument lacking. The Bankruptcy Court did not err in granting Appellee attorneys' fees. For the same reason, the Bankruptcy Court did not err in denying Appellants' two Motions for Reconsideration.

Accordingly, Appellants' first and second contentions, examined together *de novo*, are without merit.

## IV.    CIVILITY AND ADHERENCE TO STANDARDS OF CONDUCT

Throughout these briefs, and before the Bankruptcy Court, counsel have accused the other side of affirmatively telling "lies." *See*, *e.g.*, Appellee's Brief at 51 (". . . the Petitioning Creditors did the only thing they could; they lied to the Court."); Appellants' first Motion for Reconsideration at ¶ 13 (FS000219) ("If Fender had not lied in his testimony under oath, then Petitioning Creditors would have discovered very quickly that Alleged Debtor was not authorized to do business in the State of Texas."); Appellants' Brief at 18 ("This accusation is simply a lie."). Repeated charges of perjured testimony (*e.g.*, Appellants' Brief at 24), malpractice by opposing counsel (Appellee's Brief at 38); "gross and intentional mischaracterizations of fact"

---

[12] Appellants repeat their insistence on appeal that Fender committed "apparent perjury," Appellants' Brief at 24, and attempt to brush off the necessity of investigating Funnel Science's business standing because of a supposed "lack of proof" at the time. *Id*. at 25. Appellants further argue that they "were not attempting to mislead the Court or Funnel Science; whether or not such misleading occurred is irrelevant. Standing is an issue that may be brought at any time; it may even be reviewed *sua sponte* by appellate courts." *Id*. at 24. To the contrary, making misleading arguments to the Court is hardly "irrelevant."

(Appellee's Brief at 51); and an "attempt to harass and extort money" appear variously in the appellate briefs as well as in the papers before the Bankruptcy Court.

The Bankruptcy Court addressed this point in its Memorandum Opinion and Orders on Appellants' Second Motion for Reconsideration. Reviewing Appellee's request for sanctions against Appellants' counsel over the successively-filed Motions for Reconsideration, the Chief Bankruptcy Judge stated:

> The alleged debtor complains counsel filed a motion in which he falsely accused a witness of perjury and attempted to deliberately mislead this Court as to the nature of deposition testimony that is the source of the accusation. The Court is troubled by the casual (and legally and factually unsupported) charge of "perjury" by counsel for the petitioning creditors. A term such as "perjury" is freighted and should be used as carefully and as reluctantly as this Court uses other freighted terms such as "candor," "vexatious" and "malpractice."

Mem. Op. and Orders on Second Motion for Reconsideration (USBC Doc. No. 57) at 5. This Court agrees wholeheartedly. Unfortunately, Appellee also quoted the passage above in its Reply Brief. In its next sentence after quoting "other freighted terms such as 'candor,' 'vexatious' and 'malpractice,'" Appellee wrote:

> Yet the Petitioning Creditors continue to accuse Fender of perjury in their appellate brief. This only serves to strengthen Funnel Science's argument that they are **vexatious, bad-faith litigants** whom the Bankruptcy Court should have sanctioned heavily.

Appellee's Reply at 14 (emphasis added). If Appellee intended this passage to somehow reinforce its argument, it did not. Appellee also referred to "vexatious litigation tactics," Appellee's Brief at 53; "unreasonable and vexatious conduct," *id*.; "It is hard to imagine pleadings that are more vexatious and unreasonable . . . ," *id*. at 54; and other instances indicating a lack of understanding of the Court's definition of "vexatious litigant." *See* n.9, *supra*.

31

The parties filed a joint motion to expand the page limits for these briefs, which the Court granted. However, the parties have squandered their expanded page limits. For just one example, Appellants spent five pages criticizing Appellee's brief-writing skills. *See* Appellants' Brief at 16-20 (complaining of the difficulty to respond to Appellee's Brief because of mistyped case citations, references to pages that "don't exist," and that Appellee's Table of Authorities was inaccurate, among other issues). While a brief statement pointing out a significant flaw in briefing is useful, it belongs in the actual argument instead of being compiled to heap scorn on the other side.

That this is a contentious case is clear. The Court is keenly aware of the depth of emotion that accompanies a matter between former employees or contractors who believe they were owed money after having been terminated and a going-concern business that was involuntarily haled into Bankruptcy Court by those individuals. Nonetheless, a substantial result of the briefs presented here is a loss of credibility in this Court.

For the benefit of *all* counsel, the Court hereby directs their attention to portions of the Texas Disciplinary Rules of Professional Conduct and this Court's Local Rule AT-3. Specifically, counsel should review Disciplinary Rules 3.01 (Meritorious Claims and Contentions); 3.02 (Minimizing the Burdens and Delays of Litigation); 3.03 (Candor Toward the Tribunal); and 3.04 (Fairness in Adjudicatory Proceedings), at least. Further, counsel must comply with E.D. Tex. Local R. AT-3, which is mandatory on attorneys appearing in this Court. It provides the minimum standards for civility, courtesy, candor and cooperation, and is available at www.txed.uscourts.gov.

Nothing in this decision should be interpreted to preclude rigorous advocacy, including frank and candid argument when necessary. But, civility and courtesy must leaven the representation.

## V. CONCLUSION

In view of the analysis herein, the Bankruptcy Court's decisions (Order Dismissing Involuntary Bankruptcy (USBC Doc. No. 21); Order Denying Motion for Reconsideration (USBC Doc. No. 32); Final Judgment (USBC Doc. No. 33); Memorandum Opinion and Orders (USBC Doc. No. 47); and Memorandum Opinion and Orders (USBC Doc. No. 57) are **AFFIRMED** and the instant cross-appeals of Appellee Funnel Science Internet Marketing, LLC and Appellants Ronald Pyke, Virginia Rivers, Drop Visionary Branding and David Rice (to the extent he may be considered a party) are each **DENIED**.

**It is SO ORDERED.**

**SIGNED this 21st day of March, 2016.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE